J-A24032-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LORRAINE KULB AND JOSEPH KULB | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EXETER 2086 CORPORATE CENTER | : | No. 747 EDA 2021 |
| LLC,GENCO DISTRIBUTION | : | |
| SYSTEMS, INC., FEDEX | : | |
| CORPORATION, SMART RECYCLING | : | |
| AND/OR SMART RECYCLING, CO., | : | |
| INC. AND/OR SMART RECYCLING, | : | |
| INC., JOHNSON & JOHNSON | : | |
| CONSUMER INC. | : | |

Appeal from the Order Entered February 5, 2021
In the Court of Common Pleas of Monroe County Civil Division at No(s):
388 CV 2019

BEFORE: LAZARUS, J., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:        **FILED NOVEMBER 29, 2021**

Lorraine and Joseph Kulb (collectively, the Kulbs) appeal from an order

entered in the Court of Common Pleas of Monroe County (trial court) granting

summary judgment in favor of the above-captioned appellees (Property

_____

[*] Retired Senior Judge assigned to the Superior Court.

Owner) because the storm was ongoing when the accident occurred and the "hills and ridges" doctrine precluded a finding of liability.[1]  We affirm.

## I.

## A.

The relevant facts and procedural history of this case are as follows.  On March 6, 2019, the Kulbs filed a civil complaint against Property Owner averring that on January 18, 2017, Mrs. Kulb slipped and fell on an ice-covered driveway on property owned by Exeter 2086 Corporate Center, LLC and leased to Mrs. Kulb's employer, Johnson & Johnson Consumer, Inc.  Fed Ex Supply Chain, Inc. operated a portion of the warehouse and distribution center and contracted with SRI to remove snow and ice from the roadways and parking area on the property.  The Kulbs averred that due to the negligence of Property Owner, Mrs. Kulb suffered serious and permanent injury to her back from the fall and her husband a loss of consortium.

The incident occurred as Mrs. Kulb left the facility after completing her standard weekday shift of 4:00 p.m. to 12:30 a.m. for Johnson & Johnson.  There were no other witnesses to the accident.  At her December 18, 2019 deposition Mrs. Kulb testified:

---

[1] The trial court issued multiple orders on February 5, 2021, entering summary judgment in favor of each defendant on the basis of the opinion and order it filed on the same date granting the motion for summary judgment in favor of Smart Recycling, Inc. (SRI) in this case.  For ease of reference, we refer to the defendants/appellees collectively as "Property Owner."

Q. Okay. Tell me what happened. How did the accident happen?

A. I came out of the building and I— they have like a little stoop or pavement. So, here when I walked out and I got off the step and I proceeded to walk down their driveway, and I— all of a sudden, I could feel my feet sliding.

Q. Okay. After you felt your feet sliding, what happened?

A. I tried to stop, but there's nothing there for me to hold onto, and then, next thing you know, I came up in the air and down on my back and head. . . .

Q. How long did you remain on the ground?

A. I guess for a couple of minutes.

Q. Okay. Were you able to get up on your own?

A. Yes. . . .

Q. . . . And what happened when you got to your car?

A. I tried to open my car, but my car was completely iced.

Q. Okay. Was there ice on your car when you came to work that day?

A. No.

Q. Okay. Were you able to open your car door?

A. I had a problem opening my car door.

Q. Okay. Did you eventually get the car door open?

A. I finally got it open.

Q. Did you try to clear the ice off your car?

A. . . . Yes, I sat in the car and tried to warm my car up, and then I had to go out and get the ice off my car.

Q. And then were you able to get back into your car and drive away?

A. Yes.

Q. What was the weather like at the actual time of your fall?

A. . . . When I fell, like I said, it seemed like it was a clear night. It was cold.

Q. Okay. Was there any rain or snow or any kind of precipitation at the time of your fall?

A. Not at the time of my fall. When I came out of work it looked like it had rained . . . the ground was wet, but, you know, I just ignored it, because I was going home, you know.

Q. Okay. Do you know what it was that caused you to slip and fall?

A. I don't know other than the ground was very slippery when I was— like I said, when I just took a couple of steps, it was very slippery out there, and that's when I fell. . . .

Q. . . . Was there ice where you fell?

A. I didn't see anything, you know. I wasn't looking. I didn't see any ice.

Q. Okay. After you fell, did you observe in any way whether there was ice where you fell?

A. I didn't see. I didn't see anything. My main concern was just trying to get into my car so I can go home. . . .

Q. How far did you walk on the driveway area before you fell?

A. . . . It was . . . maybe four steps.

Q. Okay. And, during those four steps, you felt it to be slippery, correct?

A. Yes.

Q. . . . Before you fell, what did the condition of the driveway look like?

A. It's just —it just looked wet.

Q. Okay. Did you see any ice?

A. Not in the driveway.

Q. Did you see any kind of debris on the driveway?

A. No.

Q. Were there any puddles of water on the driveway?

A. No.

Q. Were there . . . any parts or sections of the driveway that you were able to see that looked to be patches of ice or water?

A. No.

Q. It just looked uniformly wet?

A. Correct.

Q. Did you see any snow on the —

A. Not on the drive.

Q. —on the driveway?

A. No.

Q. Did there appear to be any kind of salt or ice melt or residue from ice or salt melt on the driveway?

A. No, there was nothing.

*　　*　　*

Q. Okay.  So, it was four steps and then you started sliding—

A. No . . . I was sliding the whole time. . . .

Q. And, as you were walking through the rest of that parking lot to your car, was there anything slippery there?

A. It was all slippery.

Q. Okay. So how did you get to your car without falling?

A. I had to walk almost like a duck . . . I was afraid to walk with my feet going straight. I did it more like on the side and then kind of wobbled to get to my car.

(N.T. Deposition of Lorraine Kulb, 12/18/19, at 47, 49-50, 52-56, 124-25).

**B.**

Property Owner filed motions for summary judgment based on evidence adduced during discovery, mainly, Mrs. Kulb's deposition. While Property Owner did not dispute that Mrs. Kulb slipped and fell during generally slippery conditions, it sought summary judgment on the basis that they did not breach any duty owed to Mrs. Kulb because, pursuant to the "hills and ridges" doctrine, they had no duty to remove ice from the premises during the generally slippery conditions.

The trial court granted summary judgment in favor of Property Owner and against the Kulbs. In doing so, the trial court noted that the warehouse property was located across the road from the Mount Pocono Municipal Airport, and that its weather records showed intermittent freezing rain was falling in the area and the temperature was 32 degrees Fahrenheit at the time of Mrs. Kulb's fall. The court determined that while Mrs. Kulb did offer evidence that she fell because of black ice, "she did not see any ice at all on the ground and

did not establish the presence of dangerous 'hills and ridges' of ice that caused her to fall." (Trial Court Opinion, 2/05/21, at 13). It further found that Property Owner had no duty to make the "premises safe for walking during a period of intermittent freezing rain [because] requiring the warehouse to keep its walks and parking areas perpetually free of ice would be an impossible burden[.]" (*Id.*) (citation omitted).[2] The Kulbs timely appealed. [3]

**II.**

**A.**

On appeal, the Kulbs contend that the trial court erred in granting Property Owner summary judgment because the "hills and ridges" doctrine is

---

[2] The trial court did not order the Kulbs to file a Rule 1925(b) statement, nor did it file an additional opinion. **See** Pa.R.A.P. 1925(a), (b)

[3]

> An appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. Summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment where the right to such judgment is clear and free from all doubt. Because the issue here, namely whether there are genuine issues of material fact, is a question of law, our standard of review is *de novo* and our scope of review is plenary.

*Acme Markets, Inc. v. Seltzer*, 244 A.3d 469, 474 (Pa. Super. 2020), *appeal denied*, 253 A.3d 677 (Pa. 2021) (citation omitted).

only applicable to shield Property Owner from liability where the fall was caused by a natural accumulation. They rely on our decision in **Harvey v. Rouse Chamberland Ltd.**, 901 A.2d 523 (Pa. Super. 2006), for the proposition that the doctrine is inapplicable where a patch of ice is of artificial origin as opposed to an entirely natural accumulation. They contend that the fall could have been from an artificial condition because SRI had previously been engaged in clearing activities on the property before Mrs. Kulb fell.

**B.**

Pennsylvania Rule of Civil Procedure 1035.2 permits a party to move for summary judgment as matter of law where there is no genuine issue of any material fact as to a necessary element of the cause of action. **See** Pa.R.C.P. 1035.2(1). To prevail in a negligence action, a party must establish: "the defendant owed a duty of care to the plaintiff, that duty was breached, the breach resulted in the plaintiff's injury, and the plaintiff suffered an actual loss or damages." **Merlini ex rel. Merlini v. Gallitzin Water Auth.**, 980 A.2d 502, 506 (Pa. 2009) (citation omitted). "Negligence is the absence of ordinary care that a reasonably prudent person would exercise in the same or similar circumstances." **Id.** (citation omitted).

At issue in this case is the trial court's application of the "hills and ridges" doctrine dealing with a property owner's liability for ice and snow. We have stated that:

> The hills and ridges doctrine, as defined and applied by the courts of Pennsylvania, is a refinement or clarification of the duty owed

- 8 -

by a possessor of land and is applicable to a single type of dangerous condition, *i.e.*, ice and snow. ***See Williams v. Shultz***, 240 A.2d 812, 813–14 (Pa. 1968) (indicating that the doctrine of hills and ridges applies **to preclude liability where "the accident occurred at a time when general slippery conditions prevailed in the community as a result of recent precipitation"**). In order to recover for a fall on an ice or snow covered surface, a plaintiff must show:

> (1) that snow and ice had accumulated on the sidewalk in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians travelling thereon; (2) that the property owner had notice, either actual or constructive, of the existence of such condition; and (3) that it was the dangerous accumulation of snow and ice which caused the plaintiff to fall.

> This Court has further opined that the only duty upon the property owner or tenant is to act within a reasonable time after notice to remove the snow and ice when it is in a dangerous condition. As this Court has held, "**the hills and ridges doctrine may be applied only in cases where the snow and ice complained of are the result of an entirely natural accumulation** following a recent snowfall." ***Harvey***[, ***supra at*** 526.] Further, the protection afforded by the doctrine is predicated on the assumption that these formations are natural phenomena incidental to our climate.

> \* \* \*

> Further, in ***Morin v. Traveler's Rest Motel, Inc.***, 704 A.2d 1085 (Pa. Super. 1997), this Court recognized that a landowner has no duty to salt or sand a parking lot during/immediately after an ice storm. . . . In fact, the entire 'gist' of the hills and ridges doctrine is that a landowner has no duty to correct or take reasonable measures with regard to storm-created snowy or icy conditions until a reasonable time after the storm has ceased.

***Collins v. Philadelphia Suburban Dev. Corp.***, 179 A.3d 69, 74–76 (Pa. Super. 2018) (brackets, some citations and quotation marks omitted; emphases added). The doctrine provides liability protection for generally

- 9 -

slippery and icy conditions because "to require that one's walk be always free of ice and snow would be to impose an impossible burden in view of the climatic conditions in this hemisphere." **Alexander v. City of Meadville**, 61 A.3d 218, 224 (Pa. Super. 2012) (citation omitted).

The Kulbs contend that under **Harvey**, the hills and ridges doctrine is inapplicable because Mrs. Kulb may have fallen in an area that was plowed by SRI. In **Harvey**, on the same day there was a snowfall, the contractor plowed but there was conflicting evidence as to whether he properly salted. The plaintiff then slipped and fell while taking a walk. The record in **Harvey** plainly reflected that the plaintiff slipped on ice that was not an entirely natural accumulation and that the dangerous condition of the land was impacted by human intervention. **See Harvey** at 525 (stating plaintiff "observed that some portions of the road were covered with packed down snow from being plowed and that there were patches of cleared asphalt"). We held that the black ice that formed the dangerous condition at issue was the result of recent snow removal rather than "an entirely natural accumulation" making the hills and ridges doctrine inapplicable. **Id.** at 527.

Here, however, Mrs. Kulb's deposition testimony made no showing that SRI plowed or left unnatural accumulations of ice in the area where she fell. The Kulbs reference only the company's snow and ice removal at the large facility in general during the timeframe before she fell. (**See** Answer to Johnson & Johnson's Motion for Summary Judgment, 1/14/21, at Paragraphs

16-17; Answer to SRI's motion for Summary Judgment, 1/07/21, at Paragraph 18). In concluding there were no genuine issues of material fact and that Property Owner was entitled to judgment as a matter of law, the trial court found:

> The Kulbs have produced no evidence of the actual work done on the premises on the 17th. The record is silent about what if anything was done to the area where Mrs. Kulb fell. She did not notice anything unusual as she walked out; just that it looked like everything was wet from rain, and when she tried to walk on the driveway it was very slippery from the area where she fell all the way to her car in the parking lot. In the **Harvey** case, there was evidence that the road where the fall occurred had been plowed and appeared to be clear.
>
> \* \* \*
>
> Mrs. Kulb does not cite to any portion of the record to show that the icy conditions were not generally prevalent in the area at the time of her fall. She did not testify that she fell on a localized patch of ice. She did not point to evidence that plowing or de-icing by Smart Recycling, Inc. caused a melting and refreezing of ice where she fell. She was not aware of any amelioration of the icy conditions by the landowner before she fell and she did not rely on any such efforts.

(Trial Ct. Op., at 11-13).

We agree with the trial court's analysis and reiterate Mrs. Kulb's admission that she did not see any ice on the ground in the area where she fell — in fact, she didn't see any ice, snow, debris, salt or puddles of water at all in her path. (**See** N.T. Deposition, at 53, 55-56). She testified the driveway area on which she fell appeared freshly wet, the ground surrounding her was slippery, and that she walked "almost like a duck . . . to get to [her] car" because of the "uniformly" wet, slippery conditions. (**Id.** at 56, 125).

Nothing in her description of where she fell indicated that the conditions were "artificial" in any way, but only that they were the result of "an entirely natural accumulation" following the recent intermittent freezing rain in the community at the time. As a result, because the snow and freezing rain was ongoing at the time she fell, the hills and ridges doctrine operates to shield Property Owner from liability. *See Collins*, *supra* at 74-76.

Accordingly, because the trial court did not commit an abuse of discretion or error of law in applying the hills and ridges doctrine, we affirm the order of summary judgment.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/29/2021